UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FLAGSTAR BANK, N.A.,** | Civil Action No. 2:25-cv-8611 (MCA)(SDA) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | December 19, 2025 |
| **BARBARA NOWAK, ARTUR NOWAK, and NICOLE NOWAK,** | |
| Defendants. | |

**STACEY D. ADAMS, UNITED STATES MAGISTRATE JUDGE**

Before the Court is a motion by Plaintiff Flagstar Banks, N.A. ("Flagstar" or "Plaintiff") to Remand this action to the Superior Court of New Jersey. (ECF No. 5). Defendants Barbara Novak ("Barbara"), Artur Novak ("Artur"), and Nicole Novak ("Nicole") (collectively "Defendants") opposed the motion (ECF No. 6) and Plaintiff then filed a reply (ECF No. 9). On June 30, 2025, the Honorable Madeline Cox Arleo, U.S.D.J. referred this motion to the undersigned to issue a Report and Recommendation.[1] *See* L. Civ. R. 72.1(a)(2). This motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. The undersigned, having reviewed and considered the briefs submitted in support of, and in opposition to, Plaintiff's motion respectfully recommends that the District Court **GRANT** the motion and remand this matter to the state court.

---

[1] A decision to remand is dispositive. *In re U.S. Healthcare*, 159 F.3d 142, 146 (3d Cir. 1998) ("[A]n order of remand is no less dispositive than a dismissal order of a federal action for lack of subject matter jurisdiction where a parallel proceeding is pending in the state court."). Accordingly, this Court addresses Plaintiff's motion via this Report and Recommendation.

1

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed its original complaint in the Superior Court of New Jersey, Bergen County (Docket No. BER-L-2111-23) on or about April 21, 2023 alleging breach of contract and violations of the Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20 *et seq.* ("UFTA"). (ECF No. 1-4, ("Compl.") Ex. A). The following facts are gleaned from the Complaint. On December 7, 2015, Plaintiff's predecessor-in-interest, Signature Bank ("Signature"), extended a commercial line of credit ("LOC") to New Style Contractors, Inc. ("Borrower"), a construction company owned by Barbara, in the amount of $500,000 (*Id.* ¶¶ 1, 12). The LOC was evidenced by a Promissory Note that matured on December 5, 2016 (the "2016 Note"). (*Id.* ¶¶ 13-14). The LOC was modified and extended several times, eventually increasing to $1,250,000. (*Id.* ¶¶ 15-21). The most recent note, executed on November 30, 2022, matured by its terms on February 5, 2023 and has not been further extended. (*Id.* ¶¶ 27- 29).

The LOC was secured by, among other things, certain unconditional guaranties from the guarantors – Barbara and Artur (together, the "Guarantors"), along with Borrower's business assets as collateral pursuant to a security agreement. (*Id.* ¶¶ 1, 30). This included certain securities held in a Signature money market account in the amount of $250,000. (*Id.* ¶ 19).

Borrower failed to pay the outstanding balance due and is in default. (*Id.* ¶¶ 49, 50). As of the filing of the original complaint in April 2023, $1,049,647.46 was due and owing, plus interest accumulating at a daily rate of $524.82 and expenses. (*Id.* ¶ 51).

The Guarantors sold their residential real property located at 20 Fairhaven Drive, Allendale, NJ 07401 (the "Fairhaven Property") for $1,650,000. (*Id.* ¶ 35). After paying off the mortgage, Plaintiff believes Guarantors had a surplus of at least $875,000. (*Id.* ¶¶ 36, 37). Plaintiff alleges the Guarantors then fraudulently transferred the sales proceeds to their daughter, Nicole,

for no consideration. (*Id.* ¶ 38). Nicole then used this money to purchase another property located at 2 Leigh Court, Allendale, NJ 07401 (the "Leigh Property") in her name. (*Id.* ¶¶ 38, 39). The Guarantors, Artur and Barbara, reside in the Leigh Property, without Nicole. (*Id.* ¶ 40). Plaintiff alleges Defendants engaged in this fraudulent transfer to protect the equity in the Fairhaven Property from creditors, including Plaintiff. (*Id.* ¶ 81).

The lawsuit thus seeks to enforce Plaintiff's contractual rights in the commercial guaranties against the Guarantors. (*Id.* ¶ 1). Plaintiff also seeks a judgment and provisional remedies against Guarantors and their daughter, Nicole, based on the Guarantors' alleged fraudulent transfer of the proceeds from the sale their home to Nicole, who then used said proceeds to purchase a home where Guarantors presently reside. (*Id.*).

As explained in the Complaint, on March 12, 2023, prior to this lawsuit being filed, Signature was closed by the New York State Department of Financial Services, the Federal Deposit Insurance Corporation (the "FDIC") was appointed as receiver for Signature, and the FDIC assumed all assets and liabilities of Signature. (*Id.* ¶¶ 4-6). Plaintiff later purchased certain of Signature's assets and liabilities from the FDIC as Receiver, including the LOC at issue in the instant matter. (*Id.* ¶ 7).

Initially, this matter proceeded in state court, without Defendants pursuing removal to federal court. On January 3, 2024, Plaintiff secured a judgment against the Borrower in the amount of $1,155,703.31 in a New York court. (ECF No. 5-1 ¶ 14). However, Borrower is defunct and has not made any payments toward the judgment, hence the reason for the instant action against the Guarantors. (*Id.*).

Through a long and difficult discovery period in state court, Plaintiff uncovered misrepresentations contained in the Guarantors' personal financial statements, giving it grounds to

3

assert additional causes of action, and Plaintiff was granted leave to file an amended complaint. (ECF No. 5-1 ¶ 12; ECF Nos. 5-2 and 5-3, ("Grantz Decl.") ¶ 28).[2] Specifically, Plaintiff uncovered misrepresentations in a February 18, 2022 Personal Financial Statement (the "02/18/22 PFS"), wherein Guarantors listed the Leigh Property as their address, removed the equity from the Fairhaven Property as an asset, and added that they had a pension fund containing $793,000, virtually the same amount as the surplus from the sale of the Fairhaven Property. (ECF No. 5-1 ¶ 13; Grantz Decl. ¶¶ 13-15). None of the Guarantors' prior financial statements listed this pension fund, so Plaintiff believes they either falsified their earlier financial statements or falsified the 02/18/22 PFS. (ECF No. 5-1 ¶ 13). Plaintiff believes Defendants replaced the equity from the Fairhaven Property that had been listed on their prior personal financial statements with the purported pension fund to deceive Signature that they had a higher net worth than they did so that it would further extend commercial credit to the Borrower. (Grantz Decl. ¶¶ 19-22).

Accordingly, Plaintiff filed an Amended Complaint in state court on April 21, 2025. (ECF No. 5-1 ¶ 19, Ex. D ("Amended Complaint")). In addition to the counts asserted in the original complaint, the Amended Complaint added claims for fraud, fraud in inducement, bank fraud, and negligent misrepresentation. (*Id.*). Defendants filed an amended answer and affirmative defenses to the Amended Complaint on April 25, 2025. (ECF No. 5-1 ¶ 20; Grantz Decl. ¶ 30, Ex. E). On May 8, 2025, Defendants filed a motion seeking to have their counsel removed and have since proceeded *pro se*. (ECF No. 5-1 ¶ 21).[3]

---

[2] The Declaration of David B. Grantz was filed at ECF No. 5-2. The Exhibits to the Grantz Declaration were filed at ECF No. 5-3. Together, they will be referred to as the "Grantz Decl." and, when applicable, the corresponding exhibit number will be provided.

[3] Defendants did not need to file a motion, but merely a substitution of counsel, for their former counsel to be relieved. N.J. Ct. R. 1:11-2. Nevertheless, on June 9, 2025, the State Court granted

On June 6, 2025, after more than two years of litigation in state court, forty-six days after the filing of the Amended Complaint, and twenty-nine days after filing their answer to the Amended Complaint, Defendants filed a notice of removal based on federal question jurisdiction. (*Id.* ¶ 22; ECF No. 1). Defendants claim they did not become aware of the basis for federal jurisdiction until May 20, 2025. (ECF No. 1). Defendants contend that "[t]he claims involve federal questions arising under the Constitution and laws of the United States, specifically including claims related to the Federal Reserve's Borrower-In-Custody program. . . ." (ECF No. 1 ¶ 2). With their Notice of Removal, Defendants improperly filed Plaintiff's original Complaint, rather than the operative Amended Complaint. (ECF 1-4). Defendants did not include all documents and pleadings from the state court matter with their removal papers, as required by 28 U.S.C. § 1446(a). (ECF No. 1-3). Instead, they filed only the original complaint, the state civil case information sheet, three affidavits of service, and an order on a motion to strike.[4] (ECF Nos. 1-3 and 1-4). Defendants also improperly filed with their Notice of Removal a "First Amended Verified Counterclaim and Criminal Referral" (ECF No. 1-2) and a Notice of Voluntary Dismissal of Nicole (ECF No. 1-5). Many of Defendants' purported counterclaims are based on federal law. (ECF No. 1-2).

Plaintiff timely filed a Motion to Remand on June 25, 2025. (ECF No. 5). Plaintiff argues that (i) the removal was untimely; (ii) Defendants were aware Signature was placed in Receivership since the filing of the original complaint; (iii) Defendants cannot remove based upon

---

the motion for counsel to be relieved. (Ex. 5-1 ¶ 24). Although the State Court was technically divested of jurisdiction by this point, it is of no consequence as a formal motion was not necessary.

[4] In their Notice of Filing of State Court documents, Defendants indicated they were attaching as Exhibit B a copy of "Defendants' Motion to Quash Subpoena." (ECF No. 1-3). However, they did not attach that document but, rather, attached a copy of the Court's Order on Plaintiff's motion to strike Defendants' answer.

prospective counterclaims; and (iv) there is no other basis for removal. On June 30, 2025, Judge Arleo referred this motion to the undersigned to issue a Report and Recommendation. (ECF entry preceding ECF No. 6).

Defendants opposed Plaintiff's motion and objected to the referral to the Magistrate Judge. (ECF No. 6). In their opposition, Defendants argue that Federal Courts have exclusive jurisdiction over banking matters under the Federal Reserve Act. (ECF No. 6 at 4, 6). Namely, Defendants argue that "Operating Circular No. 10 (2023 ed.) issued under the authority of the Federal Reserve Act sets forth stringent requirements for the perfection, certification and custody of collateral under Borrower-In-Custody (BIC) arrangements, which are implicated here." (*Id.* at 4). They claim the removal was not untimely because the statutory period was only triggered after the state court denied their motion to quash, which "revealed that Plaintiff's enforcement efforts depend entirely upon collateral interests subject to exclusive federal regimes." (*Id.* at 5).

## **LEGAL STANDARD**

A defendant may remove a civil action filed in state court to a federal court where the action might originally have been brought. 28 U.S.C. § 1441(a), (b). However, the federal court to which the action is removed must have original subject matter jurisdiction. 28 U.S.C. § 1441(b). Federal district courts have subject matter jurisdiction over civil actions that involve a federal question or diversity of citizenship. 28 U.S.C. §§ 1331, 1332. Diversity jurisdiction exists when the action arises between citizens of different states, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Federal question jurisdiction exists when the action arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the well-pleaded complaint rule, a suit "arises under" federal law, and is appropriate for removal, only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Franchise Tax Bd. v. Constr.*

*Laborers Vacation Tr.*, 463 U.S. 1, 2 (1983); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

Pursuant to 28 U.S.C. § 1441, a defendant may remove an action filed in state court to a federal court with original jurisdiction over the action. Once an action is removed, a plaintiff may challenge removal by moving to remand the case to state court for, among other things, lack of subject-matter jurisdiction. *See* 28 U.S.C. § 1447(c). To defeat a plaintiff's motion to remand, the defendant bears the burden of showing that the federal court has jurisdiction to hear the case. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)); *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015) (the defendant "carries the burden of proving that removal is proper"). Where the decision to remand is a close one, district courts are encouraged to err on the side of remanding the case back to state court. *See Abels*, 770 F.2d at 29 ("Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand.").

## **ANALYSIS**

Defendants removed this action on the basis of federal question jurisdiction. Defendants assert that this case falls within the original jurisdiction of the federal courts under Article III of the United States Constitution, the Federal Reserve Act as codified in the Statutes at Large at 38 Stat. 251, the Banking Act of 1933 at 48 Stat. 162, and the federal collateral regimes established thereunder. (ECF No. 6 at 4). Plaintiff asserts that the case should be remanded for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c), as well as procedural defects including failure to timely file the removal pursuant to 28 U.S.C. § 1446(b)(3). The Court finds that Defendants'

removal is procedurally deficient because it is untimely, and substantively deficient because the Court lacks subject matter jurisdiction over Plaintiff's claims, all of which are based on state law.

## I.     Procedural Deficiencies

Pursuant to 28 U.S.C. § 1446(b)(1), a defendant seeking to remove an action from state court must file a notice of removal with the district court "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." Neither party disputes that the Notice of Removal was not filed within thirty days after Defendants received a copy of the initial complaint nor the Amended Complaint. However, Defendants allege that removal is timely under Section 1446(b)(3) which states that "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). If the removal procedure was defective, a motion to remand the action to state court under 28 U.S.C. § 1447(c) must be made within 30 days after the filing of the notice of removal. 28 U.S.C. § 1447(c); *see also Leniart v. Springfield Twp. Police Dep't*, No. 21-cv-9884 (SDW), 2021 WL 2954173, at *1 (D.N.J. June 28, 2021), *report and recommendation adopted,* No. 21-cv-9884 (SDW) (LDW), 2021 WL 2950053 (D.N.J. July 14, 2021). Here, Plaintiff timely filed a motion to remand nineteen days after the case was removed. (ECF Nos. 1, 5).

Plaintiff first alleges that removal was procedurally defective because it was untimely. (ECF No. 5-1 ¶¶ 26-29). Namely, Defendants filed the notice of removal forty-six days after the filing of Plaintiff's First Amended Complaint – outside of the thirty-day window permitted under § 1446(b). (*Id.* ¶ 27).

Defendants respond that that removal was timely under 28 U.S.C. § 1446(b)(3) because they did not discover the matter was removable on the basis of federal question jurisdiction until the state court's denial of Defendants' motion to quash on May 20, 2025, "which together with the subsequent factual developments revealed that Plaintiff's enforcement efforts depend entirely upon collateral interests subject to exclusive federal regimes." (ECF No. 6 at 5). Accordingly, to ascertain if Defendants' notice of removal was timely filed, the Court must determine whether the state court's decision on the motion to quash was the first time Defendants were able to "ascertain[] that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Defendants' argument is unavailing for several reasons. First, Defendants claim that they did not discover the basis for federal question jurisdiction until the state court issued its May 20, 2025 Order on their motion to quash. (ECF No. 1; ECF No. 6 at 5). However, Defendants did not attach the state court's decision to either their removal papers (ECF No. 1) or their opposition papers (ECF No. 6).[5] Nor did Defendants explain what was learned in either the state court's decision or the subsequent factual investigation conducted by Defendants that led to them to discover a basis for federal jurisdiction that was previously unknown. Thus, the Court has no way to assess whether there was anything in the state court opinion that suddenly revealed a basis for federal court jurisdiction.[6] As Defendants bear the burden of establishing that removal is proper *Carlyle*, 779 F.3d at 218, their failure to include this critical information is fatal to their claim.

---

[5] As explained above, the "Notice of Filing of State Court Documents" attached to Defendants' removal papers (ECF No. 1-3) purported to list "Defendant's Motion to Quash Subpoena" as Exhibit B. However, what Defendants attached as Exhibit B was a copy of the state court's April 14, 2025 Order denying Plaintiff's motion to strike the answer and granting Plaintiff leave to file an amended complaint. (ECF No. 1-4, Ex. B).

[6] Although it is certainly not the Court's responsibility to do so, a check on New Jersey Court's eCourts system revealed nothing in the state court decision on the motion to quash that provided

Further, Defendants' stated basis for removal is that bank loans secured by collateral must comply with the Federal Reserve Act and Operating Circular 10.[7] (ECF No. 6 at 4). However, the fact that this matter concerned a dispute over a commercial LOC extended to Defendants by a bank that was secured by collateral is not something Defendants only recently discovered. To the contrary, it was readily apparent from the filing of the original complaint in 2023. (Compl., *passim*). Indeed, the original complaint specified in detail the facts underlying the LOC, identified the collateral that was used to secure the LOC, and even explained that the FDIC was appointed as a receiver to Signature. (*Id.*). So any assertion that Defendants only recently learned that this matter was removable under the Federal Reserve Act and Operating Circular No. 10 is contrary to the procedural history of this case, and Defendants therefore have no valid basis for a later removal under 28 U.S.C. § 1446(b)(3). Accordingly, Defendants' removal attempt is untimely, and this procedural deficiency necessitates remand.

## II.     Substantive Deficiencies

Even if Defendants' removal was timely, it fails substantively. Although difficult to discern, in their opposition, Defendants appear to argue that removal was proper because the LOC at issue was secured by collateral and therefore must comply with the requirements of the Federal Reserve

---

Defendants with a new basis for ascertaining federal court jurisdiction. Defendants' motion sought to quash Plaintiff's subpoenas on two non-parties, Harry Katz & Associates and Posses & Chasan CPA, for access to Artur and Barbara's personal tax records, retirement accounts, and financial information from 2018 onward. In their motion, Defendants argued that because this case involves a 2022 loan, their tax and other financial records were not relevant, unduly burdensome, and harassing. The state court denied the motion, noting it had previously compelled discovery of Defendants' financial information pursuant to a confidentiality agreement, and that the third-party subpoenas were warranted after Defendants still failed to produce this information. It found the information sought in the subpoenas was relevant, not unduly burdensome, and not harassing.

[7] Operating Circular No. 10 "contains the terms under which an entity may obtain Advances from, incur Obligations to, or pledge Collateral to a Federal Reserve Bank." https://www.frbservices.org/resources/rules-regulations/operating-circulars.html.

Act and Operating Circular 10. In support of this position, Defendants make two arguments: (1) there is federal question jurisdiction under the doctrine recognized in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) because Plaintiff's right to relief "necessarily depends on the resolution of a substantial question of federal law" (ECF No. 6 at 6); and (2) Plaintiff's state law claims are preempted by federal law (*Id.*).[8]

"To find federal question jurisdiction, the federal question must be raised in the complaint, as 'a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.'" *Caride v. Altman*, 623 F. Supp. 3d 441, 455 (D.N.J. 2022) (quoting *Louisville & Nashville R. Co.* 211 U.S. at 152). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936)). Courts apply the well-pleaded complaint rule "because plaintiffs are the 'masters of their claims[,]'" and if "plaintiffs say their claims are state-law claims, we almost always credit that . . . . After all, [plaintiffs] choose to sue, so they choose why." *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 707 (3d Cir. 2022) (quoting *Caterpillar*, 482 U.S. at 392) (internal citation omitted); *see also Green Tree Servicing LLC v. Dillard*, 88 F. Supp. 3d 399, 401 (D.N.J. 2015) ("Because the plaintiff acts as 'master of the claim,' a court looks to the face of a complaint in accordance with

---

[8] Defendants also argue that their participation in state court does not constitute waiver or estoppel. However Plaintiff makes no such argument, so the Court need not address it. Additionally, Defendants broadly cite statutes such as the "Supremacy Clause," "Federal Ingredient Doctrine," and "Reserved Powers" as grounds for removal, but these are not developed in the opposition. Accordingly, the Court declines to address them. *See Carlyle*, 779 F.3d at 218 (the defendant "carries the burden of proving that removal is proper").

the 'well-pleaded complaint' rule in order to determine whether the action rests upon a federal claim."). To that end, "federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law[.]" *Grable*, 545 U.S. at 312.

      A.  <u>Plaintiff's Claims Do Not Implicate Federal Question Jurisdiction Under *Grable*</u>

While federal question jurisdiction generally resides in those cases where plaintiffs plead a federal cause of action, the Supreme Court in *Grable* recognized limited circumstances where federal question jurisdiction will exist even in the absence of a specifically pled federal cause of action. *Grable*, 545 U.S. at 312. Specifically, "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Id.* (citation omitted). The Supreme Court reaffirmed that such jurisdiction will arise in only a "'special and small category' of cases." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire Healthchoice Assurance v. McVeigh*, 547 U.S. 677, 699 (2006)). Under *Grable*, a federal question will predominate over a state law claim only if the federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Caride*, 623 F. Supp. 3d at 456 (quoting *Gunn* 568 U.S. at 258 (citing *Grable*, 545 U.S. at 313-14)). When all four of these requirements are met, federal "jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* In *Grable*, the Supreme Court specifically "expressed caution about allowing the existence of federal standards to become a gateway to federal court: '[f]or if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action.'" *Caeser v. Greentree Transp.*

12

*Co.*, 691 F. Supp. 3d 687, 690 n. 1 (E.D. Pa. 2023) (quoting *Grable*, 545 U.S. at 318). In short, the circumstances where a *Grable* exception will exist are highly limited.

Here, Defendants' argument fails at *Grable*'s first step. Initially, under *Grable*, a federal issue is "necessarily raised" only if "vindication of a right under state law [ ] necessarily turn[s] on some construction of federal law." *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014) (quoting *Franchise Tax Bd. of State of Cal.*, 463 U.S. at 9). This can occur if "a determination of federal law [is] an essential element of the plaintiff's state law claim." *Id.* On the other hand, if the state law claims "could rise or fall entirely based on the construction of state law," the complaint does not "necessarily raise" federal issues. *Id.* at 165.

From what the Court can discern, Defendants appear to assert that, because Plaintiff seeks to collect on the debt through the collateral used to secure the loan (which was then allegedly fraudulently transferred), the collection action is governed by federal banking law. (*See* ECF No. 6). Defendants broadly cite the Banking Act of 1933, Federal Reserve Act, and Operating Circular 10 as the basis for this argument. However, Plaintiff's claims do not allege, nor do they hinge upon, a violation of any of these federal laws. Rather, they are straight-forward state law claims for breach of contract, violation of the UFTA, violation of the Uniform Voidable Transactions Act, fraud in the inducement, bank fraud, and negligent misrepresentation. (Amended Compl., *passim*). Nor did Defendants allege anywhere in their operative Answer and Affirmative Defenses to the Amended Complaint that they should be relieved of their obligation under the LOC because of some violation of federal banking laws.[9] The conduct for which Plaintiff seeks redress is

---

[9] To the extent Defendants attempt to remedy this deficiency by attaching a "First Amended Verified Counterclaim and Criminal Referral" to their removal papers, such filing was improper. A review of the state court's eCourts system revealed that no such pleading was filed in state court. A party is not permitted to add new pleadings to removal papers. 28 U.S.C. § 1446(a) (removing

13

appropriately addressed through the state law claims that apply to loans, credit, and the collection of debt. None of Plaintiff's claims turn on the construction of federal law, failing the "necessarily raised" requirement of *Grable*. Similarly, there is no federal issue that is "actually disputed" in the operative pleadings and Defendants argument therefore fails the second prong of *Grable* as well.

      It is also significant that there is no private right of action under the Federal Reserve Act or Operating Circular No. 10, which goes to *Grable*'s "substantiality" prong. *See Griffin v. Phila. Fed. Credit Union*, No. 24-cv-909, 2024 WL 3403127, at *2 (E.D. Pa. July 11, 2024) (recognizing that the Federal Reserve Act does not create a private right of action). As the Supreme Court recognized in *Grable*, while not completely dispositive, the lack of a federally created private right of action weighs against a finding of substantiality. *Grable*, 545 U.S. at 318. The *Grable* Court noted that "[t]he violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings. . ." however it was "improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law 'solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence]… under state law.'" *Id.* at 318-19 (citing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 811-12 (1986)) (internal citations omitted). Stated

---

party shall file a notice of removal "together with a copy of all process, pleadings, and orders served upon such defendant…."). To amend a pleading under federal law, Defendants must either seek the consent of their adversary or file a motion with the Court. Fed. R. Civ. P. 15. Defendants did neither here. Instead, they simply attached a brand-new pleading to their removal papers. (ECF No. 1). This is procedurally improper and said document shall be disregarded. Moreover, counterclaims based on federal law are insufficient to create federal question jurisdiction because "a defense implicating federal law is not sufficient to create federal question jurisdiction under 28 U.S.C. § 1331." *Rosen v. Cont'l Airlines, Inc.*, No. 10-cv-5859 (WJM), 2011 WL 1467209, at *3 (D.N.J. Apr. 18, 2011) (citing *Carrington v. RCA Global Commc'ns, Inc.*, 762 F. Supp. 632, 636 (D.N.J. 1991) ("the fact that issues of federal law may be involved, as in the nature of a defense, will not suffice to create federal question jurisdiction")).

differently, the mere fact that a federal law may have been violated (which is not even alleged in this matter), particularly in the absence of a private right of action under said federal law, weighs heavily against a finding that there is a substantial federal question that requires resolution by a federal court. For all of these reasons, *Grable* does not provide a basis for this Court exercising federal jurisdiction over this matter.

    B.  <u>Plaintiff's Claims Are Not Preempted by Federal Law</u>

Defendants also summarily assert, without any supporting argument, that "the Federal Reserve Act preempts collateral state collateral regimes." (ECF 6 at 6). Complete preemption is an exception to the well-pleaded complaint rule. *Barone v. Pub. Serv. Elec. & Gas Co.*, No. 18-cv-16569 (KM) (JBC), 2019 WL 3297230, at *4 (D.N.J. July 22, 2019). The "complete preemption doctrine" dictates that once an area of state law is pre-empted by federal law, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393; *cf. Newmark Pioneer, LLC v. Data Trace Info. Sols., LLC*, No. 11-cv-376, 2012 WL 1854093, at *4 (D.N.J. May 21, 2012) ("[The] exception applies only when a plaintiff pleads state law claims that should have been brought as federal claims under a federal statute that completely preempts the state law claims."). "Thus a state [law] claim may be removed to federal court . . . when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

The problem with Defendants' argument is that Plaintiff's claims are not preempted by federal law. *See Pinckney v. Somerset Prob. Child Support Enf't*, No. 24-cv-8474 (RK) (JTQ), 2025 WL 2346440, at *4 n. 9 (D.N.J. Aug. 13, 2025) (citing *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 310 (3d Cir. 1994) (breach of contract claims do not raise a federal question));

15

*Sherard v. Allstate Ins. Co.*, No. 21-cv-1669, 2021 WL 2343020, at *2 (E.D. Pa. June 7, 2021) ("a common law breach of contract claim . . . can[not] support federal question jurisdiction because such claims do not arise under the Constitution, laws, or treaties of the United States"); *Combined Commc'ns Corp. v. Marsh Prods., Inc.*, No. 85-cv-7353, 1986 WL 1213, at *1 (E.D. Pa. Jan. 23, 1986) ("a collection case . . . is a state law claim"); *BMO Harris Bank, N.A. v. V&C Transp., Inc.*, No. 22-cv-53 (DLB) (CJS), 2022 WL 14131317, at *2 (E.D. Ky. Oct. 24, 2022) (a standard collection action where a bank was seeking to collect on a business loan in default, and to recover the collateral that secured its loan should be heard in state court). Defendants carry the burden to show that federal court has jurisdiction to hear the case and that removal is proper. *Abels*, 770 F.2d at 29. Defendants' blanket assertions fail to demonstrate how Plaintiff's claims give rise to federal question jurisdiction. Accordingly, Defendants' removal fails substantively and requires remand.

## CONCLUSION

For the foregoing reasons, and for good cause shown:

IT IS, THEREFORE, on this **19th** day of **December, 2025**

1.  **RECOMMENDED** that Plaintiff's Motion to Remand to the Superior Court of New Jersey, Bergen County, be **GRANTED**; and it is further

2.  **ORDERED** that the parties shall have fourteen days to file and serve objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c)(2); and it is further

3. **ORDERED** that the Clerk of the Court shall **TERMINATE** the Motion pending at ECF No. 5 and activate this Report and Recommendation for the District Judge's review.

                                          */s/ Stacey D. Adams*
                                          Hon. Stacey D. Adams
                                          United States Magistrate Judge

**Dated**: December 19, 2025